PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                              No. 02-4093

ROLANDO STOCKTON,
          *Defendant-Appellant.*

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.                                              No. 02-4139

ROLANDO STOCKTON,
          *Defendant-Appellee.*

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, Senior District Judge.
(CR-99-352-MJG)

Argued: September 26, 2003

Decided: November 17, 2003

Before WILLIAMS, TRAXLER, and KING, Circuit Judges.

Affirmed in part, reversed in part, and remanded with instructions by
published opinion. Judge Williams wrote the opinion, in which Judge
Traxler and Judge King joined.

**COUNSEL**

**ARGUED:** G. Godwin Oyewole, Washington, D.C., for Appellant. James G. Warwick, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Thomas M. DiBiagio, United States Attorney, Andrea L. Smith, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

Rolando Stockton appeals his convictions for drug conspiracy and for firearms-related offenses committed in connection with that conspiracy. Stockton argues that the evidence presented at trial was insufficient to support the jury's guilty verdict on each of the counts of conviction, that the district court committed plain error in failing to give the jury a "multiple conspiracies" instruction, and that prosecutorial misconduct during the trial effectively denied him his right to a fair trial. The Government cross-appeals the district court's decision to depart downward from the prescribed sentence range based on the alleged over-representativeness of the career offender enhancement. For the reasons set forth below, we affirm the convictions, but reverse the sentence, and remand the case for re-sentencing with instructions to impose a sentence within the range prescribed by the Sentencing Guidelines.

I.

On April 17, 2001, a federal grand jury sitting in the District of Maryland returned a five-count Fifth Superseding Indictment (indictment) charging Rolando Stockton with various offenses related to his alleged participation in a heroin trafficking conspiracy operating in the Park Heights neighborhood of Baltimore, Maryland. In count one of the indictment, the Government charged Stockton with conspiracy to distribute, and conspiracy to possess with intent to distribute, one kilogram or more of heroin from 1994 to April 2000, in violation of 21 U.S.C.A. § 846 (West 1999). In support of this conspiracy charge,

the Government alleged that the members of the conspiracy used violence to enforce discipline within the conspiracy and used violence to keep those outside the conspiracy from interfering with the conspiracy's operations. One of the alleged overt acts of the conspiracy was the attempted murder of Ricky Ricardo Jones on May 13, 1999. That attempt resulted in the shooting of Clinton Williams. In counts two through five of the indictment, the Government charged Stockton with four firearms violations stemming from the events of May 13, 1999, specifically, use of a firearm against Jones during and in relation to a drug trafficking crime in violation of 18 U.S.C.A. § 924(c) (West 2000) (count two); use of a firearm against Clinton Williams during and in relation to a drug trafficking crime, also in violation of § 924(c) (count three); possession of a firearm by a convicted felon in violation of 18 U.S.C.A. § 922(g)(1) (West 2000) (count four); and possession of ammunition by a convicted felon, also in violation of § 922(g)(1). Stockton entered a plea of not guilty, and a trial by jury ensued.

During the trial, the Government presented voluminous evidence respecting the existence of the Park Heights heroin trafficking conspiracy and Stockton's role therein. The evidence included testimony from the police officers who had investigated the conspiracy, individuals involved in the street-level operations of the conspiracy, and two of the top-level members of the conspiracy, Antonio Hayes and Elijah Jacobs. Collectively, these witnesses described a criminal enterprise that established a market for the distribution of heroin in the mid-1990s, and ruthlessly protected that market through 2001 by frequently using violence to dispose of competitors and transgressors. Hayes and Jacobs both testified that Stockton was an active member of the conspiracy, both in 1994 and in 1999. Stockton was absent from the conspiracy between those years because of his incarceration resulting from a state conviction.

Evidence at trial similarly supported the Government's charges respecting the assault on Ricky Ricardo Jones and Clinton Williams on May 13, 1999. Particularly damaging to the defense was the testimony of Williams, an eyewitness to the assault. Williams testified that, on that date, he gave Jones a ride into the Park Heights neighborhood. While in Park Heights, he stopped in an alley to let Jones out of the car. Jones got out of the car and left the immediate vicinity.

Williams remained in the car, and after a short period of time, Stockton approached the car and asked Williams why he was in the neighborhood and why he was with Jones. Williams testified that, before he could answer, Stockton spotted Jones, an argument ensued, and Stockton pulled a gun. Upon seeing the gun, Williams ducked down and attempted to flee down the alley in his car. As he was fleeing, Williams heard gunfire, and soon realized that he had been shot in the right arm. Antonio Hayes corroborated Williams's testimony by noting that, on May 13, 1999, Stover Stockton — Rolando's brother and fellow member of the conspiracy — asked Hayes for a gun because Stover had given his gun to Rolando. Hayes also explained that Jones was targeted because he was selling drugs in the neighborhood without the conspiracy's permission.

Stockton testified in his own defense and generally denied an association with the Park Heights conspiracy, either in 1994 or 1999. Regarding the events of May 13, 1999, Stockton admitted being in the general area where the shooting took place but claimed that he was not the gunman. Rather, Stockton explained, he had acted as a peacemaker and tried to calm Jones, who, according to Stockton, was upset because his cousin had been assaulted. Stockton testified that, after speaking with Jones, Jones gave him a hug, and then Stockton walked away toward the house of Tasha Gray, Stockton's girlfriend and the mother of one of his children. As Stockton was walking away, he heard gun shots and then ran toward Gray's house. Stockton also testified that he had never met Jones before May 13, 1999.

During the cross-examination of Stockton, the Government pressed Stockton on whether he actually had known Jones before the May 13 incident. The following exchange ensued:

Q.   If I understood your testimony a few minutes ago, you told us all that prior to May 13th of 1999, you had never seen, never laid eyes on Ricky Ricardo Jones, correct?

A.   That's correct.

Q.   And if I also understood your testimony, you told us that you don't think you'd be able to recognize him if you saw him, is that also your testimony?

A.   Yes.

Q.   And you have no reason to understand, based upon what you told us, why anybody might shoot at him, correct?

A.   Correct.

Q.   *If you do not know Ricky Ricardo Jones, other than the brief conversation that you told us about in your direct testimony a few moments ago —*

A.   Yes.

Q.   *— why are you calling him as a witness on Monday?*

(J.A. at 101-02.) At this point, counsel for Stockton objected, to which the Court responded:

> I sustain the objection. That's preposterous. That's absolutely obscene. Strike that. Disregard that. It is absolutely nonsense. It is ridiculous. [T]he man has a lawyer who investigated the case. Mr. Ricardo Jones is obviously a figure in the case. Of course, counsel's going to find him. Now, move to something else.

(J.A. at 102.) Jones eventually did testify for the defense and essentially corroborated Stockton's version of the events of May 13, 1999.

In its rebuttal case, the Government called Tasha Gray, whom the defense had chosen not to call. Gray related a version of the events of May 13, 1999, that might have been helpful to Stockton, had it not been at odds with the testimony of Stockton and Jones. Gray testified that Stockton had been on the porch of her house with her from the time Jones drove into the neighborhood until after the shooting. Gray also testified that defense counsel had told her that she would be called as a witness for the defense.

During closing argument, the Government highlighted the fact that Stockton had failed to call Gray as a witness, stating, "[a]nd then, of

course, there was Tasha Gray, who was supposed to be a defense witness, but then [they] chose not to call her." (J.A. at 123.) Counsel for Stockton objected and the district court responded by stating, "[w]ell, I'm going to allow argument, and people have a difference of opinion, you can air it in your arguments. Okay. Go ahead." (J.A. at 123.)

At the close of argument, counsel for Stockton moved for a mistrial, stating that the inappropriate question during the cross-examination of Stockton in combination with the Government's mention of Stockton's failure to call Tasha Gray as a witness effectively denied Stockton his right to a fair trial. The district court denied the motion, and the jury ultimately found Stockton guilty on each of the five counts of the indictment.[1]

At sentencing, Stockton moved for a downward departure based on the over-representativeness of his criminal history category. *See U.S. Sentencing Guidelines Manual* § 4A1.3 (1998). Because Stockton had two prior felony controlled substance convictions — an October 10, 1990 conviction for possession with intent to distribute narcotics and a January 4, 1991 conviction for distribution of narcotics — he qualified as a career offender under U.S.S.G. § 4B1.1. After initially arguing that the career offender enhancement should not apply at all because the predicate offenses should not count separately, defense counsel conceded that the predicate offenses should count separately, and then made an oral motion for downward departure pursuant to U.S.S.G § 4A1.3 based on the over-representativeness of the career offender classification. Stockton's rationale in support of his motion was that both of the predicate offenses were for dealing drugs in the Park Heights area of Baltimore, and thus they were part of the same course of conduct. The district court granted the motion for departure, and sentenced Stockton as if the career offender enhancement did not apply, resulting in a downward departure of 150 months. In total, Stockton received a sentence of 330 months incarceration (210 months on count one, and 120 months on each of counts four and five (concurrent to each other and to the sentence on count one), and 120 months on count two (consecutive)). Had the district court not departed, Stockton would have received a minimum sentence of 360

---

[1]The district court later vacated the conviction on count three for reasons that are not relevant to this appeal.

months on count one, which, with the mandatory consecutive 120 month sentence on count two, would have resulted in a minimum sentence of 480 months incarceration.

On appeal, Stockton challenges his convictions, arguing that (1) the evidence at trial was insufficient to support his conviction on any of the charges; (2) the district court committed plain error in failing to issue a "multiple conspiracies" instruction; and (3) that the Government's transgressions during the trial effectively denied him his right to a fair trial, and therefore, the district court should have declared a mistrial. The Government cross-appeals the sentence, arguing that the departure was inappropriate and should be reversed. We address each issue in turn.

## II.

## A.

When considering a sufficiency of the evidence challenge to a guilty verdict, we must sustain the jury's verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." *United States v. Glasser*, 315 U.S. 60, 80 (1942); *see also United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003). In determining whether the evidence in the record is "substantial," we view the evidence in the light most favorable to the Government and inquire whether there is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt. *United States v. Burgos*, 94 F.3d 849, 862-63 (4th Cir. 1996).

The evidence presented at trial, when viewed in the light most favorable to the Government, is more than sufficient to support the jury's guilty verdict on each of the counts. Respecting the conspiracy charge, the jury heard corroborating testimony from multiple witnesses about the existence of the agreement among multiple parties to distribute heroin in the Park Heights neighborhood. Two of the top echelon members of the conspiracy testified that Stockton knew of, and participated in, the conspiracy from 1994 through 1999, with the only interruption stemming from his incarceration. Thus, the evidence was more than sufficient to satisfy each of the elements of a conspir-

acy under 21 U.S.C.A. § 846. *See Burgos*, 94 F.3d at 857-58 (explaining that conspiracy under § 846 requires the Government to prove "(1) an agreement to possess [a controlled substance] with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy" and noting that these elements may be proved wholly through circumstantial evidence).

Regarding the weapons charges, the testimony of Clinton Williams placed Stockton at the scene of the May 13, 1999 incident with gun in hand. Although Williams did not see Stockton actually fire the gun, Williams's testimony that he heard gunshots immediately after seeing Stockton with the gun is sufficient direct evidence to support the reasonable inference that Stockton was the one who fired. While it is true that Williams's recollection of the events was at odds with that of Stockton and Jones, it was the responsibility of the jury to weigh the evidence and determine which version to believe. *See id.* at 862. The jury chose to believe Williams and disbelieve Stockton and Jones, and we see no reason to disturb that conclusion here. In sum, the evidence was sufficient to support the jury's guilty verdict on each of the firearms charges.

B.

The next issue that Stockton raises is whether the district court should have given a "multiple conspiracies" instruction to the jury.[2] At trial, Stockton neither requested such a "multiple conspiracies" instruction, nor objected at the charging conference to the lack of such an instruction. Therefore, we consider any resulting error only if it is "[a] plain error that affects substantial rights." Fed. R. Crim. P. 52(b). In order to notice a putative error under Rule 52(b), Stockton first "must demonstrate [1] that an error occurred, [2] that the error was plain, and [3] that the error affected his substantial rights." *United States v. Promise*, 255 F.3d 150, 154 (4th Cir. 2001). Even if Stockton satisfies these requirements, correction of the error remains within the discretion of the appellate court, which the court "should not exercise

---

[2]Neither in his briefs nor at oral argument did Stockton identify the specific "multiple conspiracies" instruction that the district court should have given.

. . . unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration in original) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

In cases where a defendant is charged with conspiracy, a district court must issue a "multiple conspiracies" instruction where the evidence supports a finding that multiple conspiracies existed. *United States v. Bowens*, 224 F.3d 302, 307 (4th Cir. 2000). However, "'[a] multiple conspiracy instruction is not required unless the proof at trial demonstrates that [the defendant] [was] involved *only* in [a] separate conspirac[y] *unrelated* to the overall conspiracy charged in the indictment.'" *United States v. Squillacote*, 221 F.3d 542, 574 (4th Cir. 2000) (quoting *United States v. Kennedy*, 32 F.3d 876, 884 (4th Cir. 1994)). We have noted that a single overall conspiracy can be distinguished from multiple independent conspiracies based on the overlap in actors, methods, and goals: "A single conspiracy exists where there is 'one overall agreement,' or 'one general business venture.' Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988) (citations omitted).

The evidence at trial did not support a finding that Stockton was involved in a separate conspiracy. Instead, the evidence at trial showed rather compellingly that one, and only one, enterprise controlled the distribution of heroin in the Park Heights neighborhood of Baltimore from 1994 through 1999, and that it operated as one continuous business enterprise. Elijah Jacobs testified at trial that Rolando Stockton was involved in the conspiracy before he went to jail in 1994, and that he rejoined upon his release in 1999. There was no evidence that Stockton was involved in a separate conspiracy unrelated to the Park Heights ring. The district court committed no error, plain or otherwise, in failing to give a "multiple conspiracies" instruction.

## C.

The remaining issue Stockton raises on appeal is whether the incidents of alleged prosecutorial misconduct had the effect of denying Stockton his right to a fair trial. Stockton raised this argument at trial in a motion for mistrial, which the district court denied. We review

the denial of a motion for mistrial for abuse of discretion. *United States v. Stewart*, 256 F.3d 231, 241 (4th Cir. 2001).

We apply a two-pronged test in determining whether alleged incidents of prosecutorial misconduct warrant reversal. We must assess "(1) whether the prosecutor's remarks or conduct was improper, and (2) whether such remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial." *United States v. Francisco*, 35 F.3d 116, 120 (4th Cir. 1994); *see also United States v. Bennett*, 984 F.2d 597, 608 (4th Cir. 1993) (applying the standard to an allegedly improper question asked during cross-examination). The Government candidly concedes that its question during the cross-examination of Stockton was improper, but disputes the assertion that the reference in closing argument to the defendant's decision not to call Tasha Gray as a witness was improper. Therefore, our task here is to determine whether the Tasha Gray comment was, in fact, improper, and whether the cumulative effect of any prosecutorial misconduct prejudicially affected Stockton's substantial rights.

Stockton has not clearly explained how the Government's comment regarding Tasha Gray implicated his constitutional rights. In cases where the defendant has exercised his Fifth Amendment right not to testify, the Government must exercise care in commenting on the defendant's failure to produce witnesses, so as not to violate the rule of *Griffin v. California*, 380 U.S. 609 (1965), by calling attention to the defendant's own failure to testify. *See United States v. Parker*, 903 F.2d 91, 98 (2d Cir. 1990); *United States v. Fleishman*, 684 F.2d 1329, 1343 (9th Cir. 1982). But here, Stockton testified, so the comment could not have implicated his right to remain silent. Moreover, because Tasha Gray herself testified, the comment was not an invitation to the jury to infer that the testimony would have been adverse to Stockton's case. *Cf., e.g., United States v. Fisher*, 484 F.2d 868, 870 (4th Cir. 1973) ("Where a witness is readily available to both sides, no inference is to be drawn against either party from the fact that he has not been called."). In short, Stockton has not demonstrated how this comment implicated *any* constitutional right.[3] In actuality,

---

[3]It is important to note that, had Gray herself not testified that the defense had intended to call her as a witness, her status as an erstwhile defense witness would not have been evidence in the record, and any mention thereof in closing argument would have been an inappropriate attempt by the prosecution to inject into the case evidence not before the jury.

the comment appears to have been nothing more than an attempt to call attention to the inconsistencies between Gray's testimony and Stockton's testimony, and thereby invite the jury to infer that Stockton was not a credible witness — the type of inference that is grist for the mill in closing argument.

Because the Tasha Gray comment was not improper, the only incident of prosecutorial misconduct was the Government's improper question to Stockton on cross-examination. Therefore, Stockton can prevail only if that question was so prejudicial as to deny him his right to a fair trial. In determining whether a prosecutor's inappropriate remarks amount to reversible misconduct, four factors are relevant:

> "(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters."

*Bennett*, 984 F.2d at 608 (quoting *United States v. Harrison*, 716 F.2d 1050, 1052 (4th Cir. 1983)).

Applying these factors to the present case, it is clear that Stockton has not demonstrated reversible prejudice. First, any tendency to mislead the jury and prejudice Stockton was minimal. The Government may have prejudiced Stockton by suggesting an inappropriate reason to doubt his credibility. Nevertheless, the district court promptly mitigated the damage by sustaining the defense's objection and instructing the jury in emphatic terms to disregard the question. Therefore, any resulting prejudice was minimal. *See Bennett*, 984 F.2d at 608 (finding that a district court, in sustaining an objection to an inappropriate question on cross-examination, effectively minimized the prejudice of an inappropriate question). In addition, the question was relatively isolated. Although the Government made a concerted effort to attack Stockton's credibility, it only crossed the line on this lone occasion and did not refer to Stockton's familiarity with Jones during closing argument. Third, the Government's case in general, and the

evidence of Stockton's lack of credibility specifically, were strong. Stockton's version of events on May 13, 1999, was directly at odds with that of the victim, Clinton Williams, and inconsistent with that of Tasha Gray. In short, setting to the side the inappropriate question, the jury had ample basis to conclude that Stockton lacked credibility as a witness and was guilty of the crimes charged. Finally, there is no suggestion that the prosecution's inappropriate question was a deliberate attempt to divert the jury's attention to extraneous matters. Therefore, the district court did not abuse its discretion in denying Stockton's motion for mistrial.

III.

The Government raises one issue in its cross-appeal: Whether the district court erred when it departed downward based on the over-representativeness of Stockton's classification as a career offender under U.S.S.G. § 4B1.1. Sentencing courts may depart from the sentence ranges prescribed by the Sentencing Guidelines whenever the Guidelines have not accounted for peculiar circumstances in a given case. Generally, a court may depart from the Guidelines when it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C.A. § 3553(b) (West 2000). We review the district court's factual determinations made in connection with sentencing for clear error, *United States v. Rybicki*, 96 F.3d 754, 757-58 (4th Cir. 1996), and review the ultimate decision to depart de novo.[4] 18 U.S.C.A. § 3742(e) (West Supp. 2003).

---

[4]Prior to April 30, 2003, we reviewed a district court's decision to depart from the Guidelines for abuse of discretion. *See Koon v. United States*, 518 U.S. 81 (1996); *United States v. Rybicki*, 96 F.3d 754, 757-58 (4th Cir. 1996). Congress, however, recently amended 18 U.S.C.A. § 3742(e)(4), to require de novo review of certain departure decisions. *See* Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, § 401(d)(2), 117 Stat. 650, 670. Application of the de novo standard of review pursuant to § 402(d) of the PROTECT Act here does not implicate the Ex Post Facto Clause because a change in the standard of review merely changes "*who* within the federal judiciary makes a particular decision, . . . not the legal standards for that decision." *United States v. Mallon*, ___ F.3d ___, No. 03-2049, 2003 WL 22285302, *6 (7th Cir. Sept. 18, 2003); *see United States v. Hutman*, 339 F.3d 773, 775 (8th Cir. 2003).

The Sentencing Guidelines state that sentencing courts may depart downward where the defendant's criminal history category "significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3. Therefore, a sentencing court is encouraged to depart downward when a defendant's criminal history category exaggerates the seriousness of his past criminal conduct or the likelihood that he will commit further crimes. *United States v. Adkins*, 937 F.2d 947, 952 (4th Cir. 1991). The same analysis applies when a defendant urges a sentencing court to find that his classification as a career offender over-represents the seriousness of his actual criminal history or his likelihood of recidivism. *Id.*

Over-representativeness arguments of the type that Stockton advances here are availing where, for instance, a defendant has two relatively minor prior convictions that do not suggest that the defendant is truly a "career offender." *United States v. Pearce*, 191 F.3d 488, 498 (4th Cir. 1999). But where, as here, the defendant's criminal history reflects recidivism in controlled substance offenses, an over-representativeness departure is almost never appropriate. *See Adkins*, 937 F.2d at 952 (noting that Congress deemed controlled substance recidivism "especially dangerous").

Rolando Stockton is exactly the type of person to whom the career offender classification is intended to apply. His criminal history, as reflected by the Pre-Sentence Investigation Report and the facts presented at trial, indicates that Stockton has been entrenched in the drug trade since at least 1990. He committed two serious drug offenses in late 1990 and early 1991, for which he received a combined sentence of 10 years incarceration, all of which was suspended, along with a term of 5 years supervised probation. That leniency proved improvident, as Stockton violated the terms of his probation by unlawfully possessing a handgun in 1994, which resulted in a three-year prison term with the Maryland Department of Corrections. Almost immediately upon his release from incarceration, he returned to a life of crime, committing the acts for which the jury convicted him here. In short, Stockton is the very portrait of a career offender, and his classification as such under U.S.S.G. § 4B1.1 does not over-represent his actual criminal history.

## IV.

For the foregoing reasons, we affirm Stockton's convictions, and reverse the district court's decision to depart downward based on the over-representativeness of the career offender classification. Accordingly, we remand the case for re-sentencing, with instructions to apply the career offender classification.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED WITH INSTRUCTIONS*