Vacated by Supreme Court, January 24, 2005

**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

v.

TONY ANTHONY HEARNE,
                *Defendant-Appellant.*

No. 03-4979

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, District Judge.
(CR-03-217)

Submitted: May 28, 2004

Decided: June 29, 2004

Before WIDENER and SHEDD, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

### COUNSEL

Louis C. Allen, III, Federal Public Defender, Eric D. Placke, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant. Anna Mills Wagoner, United States Attorney, Michael F. Joseph, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Tony Anthony Hearne pled guilty to possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (2000), and possession of counterfeit reserve notes, 18 U.S.C.A. § 472 (West Supp. 2004). The district court departed upward from the applicable guideline range and imposed a sentence of 205 months imprisonment. The departure was based on the court's decision that criminal history category VI did not adequately reflect Hearne's past criminal conduct or the likelihood that he would commit future crimes and his use of the illegally possessed firearm in a manner that created a significant risk of death or serious bodily injury to multiple individuals. *U.S. Sentencing Guidelines Manual* §§ 4A1.3, p.s., 2K2.1, comment. (n.16(4)) (2003). Hearne appeals his sentence. We affirm.

On January 26, 2002, Hearne threatened David Horne by putting two firearms to his chest. Horne disarmed Hearne, who left but returned in half an hour with another firearm. Hearne found Horne standing in front of his house and began shooting at him. About ten people were in the immediate vicinity; no one was injured. Horne described the two guns he took from Hearne during the first incident as a MAC-9 and a MAC-10. Later the same day, in a car driven by Michelle Helms, Hearne followed Lindsey Lentz, his former girlfriend, and shot at her. Lentz drove to a police station. When Hearne arrived, the officers obtained Helms' consent to search the car. They found a Ruger handgun under the front seat, six grams of crack in the console, and fourteen counterfeit $100 federal reserve notes in Hearne's jacket. At the time, Hearne had been convicted of assaulting Lentz and was awaiting sentencing.

The probation officer recommended the enhanced base offense level of 26 for the felon-in-possession count because the offense involved a semiautomatic assault weapon described in 18 U.S.C.

§ 921(a)(30) (2000) and Hearne had two predicate convictions. USSG § 2K2.1(a)(1). With other enhancements and an adjustment for acceptance of responsibility, the recommended offense level was 29. Hearne had seventeen criminal history points, which placed him in criminal history category VI. The probation officer recommended an upward departure from the guideline range pursuant to USSG § 4A1.3 because criminal history category VI understated the seriousness of Hearne's past criminal conduct and the likelihood that he would commit future crimes, USSG § 4A1.3 and because Hearne created a substantial risk of death or serious bodily injury to multiple individuals when he shot at Horne. Application Note 16(4) to § 2K2.1 provides that an upward departure may be warranted when the offense creates such a risk. The government moved for a departure on both grounds.

At the sentencing hearing, Horne testified that he was not sure of the make of the two firearms he took from Hearne, but that they were "Uzi-like guns," with an ammunition clip. Horne said someone had run off with one of the guns after he threw it on the ground; the second gun he had handed to his brother. He was not sure what happened to either weapon. Hearne sought to impeach Horne's credibility by presenting testimony from an agent of the Bureau of Alcohol, Tobacco, and Firearms. The agent testified that he had been given an Intratec TEC-9 firearm fifteen months after the incident by a man who said he got it from Horne and that it came from Tony Hearne. Horne testified that he knew the man but denied giving him a gun.

The district court determined that Horne was a credible witness and that his testimony established that Hearne threatened him with semi-automatic assault weapons, which was sufficient for application of the enhanced base offense level. The court also decided that an upward departure of one offense level was warranted pursuant to § 4A1.3 and § 2K2.1.

On appeal, Hearne first contests the enhancement for possession of a semiautomatic assault weapon. The district court's factual finding that Hearne possessed a semiautomatic assault weapon of the kind described in 18 U.S.C. § 921(a)(30) is reviewed for clear error. *United States v. Love*, 134 F.3d 595, 606 (4th Cir. 1998). The government has the burden of proving facts that may enhance the sentence by a preponderance of evidence. *United States v. Urrego-Linares*, 879

F.2d 1234, 1239 (4th Cir. 1989). A "semiautomatic assault weapon," as defined in § 921(a)(30)(A), includes a variety of specific weapons, including any Uzi, the Intratec TEC-9, and the SWD M-10, as well as copies or duplicates of these weapons.[1]

Hearne argues on appeal that Horne's testimony was not reliable because the government failed to establish that he was knowledgeable about firearms. Hearne also maintains that Horne was not a credible witness because he claimed that he did not know what happened to the guns. However, the district court determined that Horne's testimony was credible and that it established by a preponderance of the evidence that Hearne possessed a MAC-10 semiautomatic assault weapon. The district court's findings based on its assessment of the credibility of a witness is entitled to great deference. *United States v. Hassanzadeh*, 271 F.3d 574, 580 (4th Cir. 2001). We conclude that the court did not clearly err in finding that Hearne possessed a MAC-10 or similar semiautomatic assault weapon and in applying the enhanced base offense level.

Hearne also challenges the upward departure. A sentencing court may depart from the guideline range only if the court finds an aggravating or mitigating factor of a kind, or to a degree, not adequately considered by the Sentencing Commission. 18 U.S.C.A. § 3553(b) (West Supp. 2004); *Koon v. United States*, 518 U.S. 81, 98 (1996). The appeals court reviews the district court's factual determinations underlying sentencing for clear error. *United States v. Rybicki*, 96 F.3d 754, 757 (4th Cir. 1996). We review the district court's decision to depart de novo. 18 U.S.C.A. § 3742(e) (West Supp. 2003); *see United States v. Stockton*, 349 F.3d 755, 764 n.4 (4th Cir. 2003) (discussing the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, § 401(d)(2), 117 Stat. 650, 670, and the application of de novo, rather than abuse of discretion, standard of review to district court's decision to depart from the guideline range), *cert. denied*, 124 S. Ct. 1695 (2004). The PROTECT Act also requires the district court

---

[1]Military Armament Corporation (MAC) designed a submachine gun in the early 1970's which has been copied and modified by other manufacturers, including SWD, Incorporated. William Ehringer, *A MAC History Lesson*, FirearmsID.com (Jan. 2001), *at* http://www.firearmsid.com.

to provide its reasons for departure with specificity in the judgment and commitment order. *See* PROTECT Act, § 401(c)(1), 117 Stat. at 669; 18 U.S.C.A. § 3553(c)(2) (West Supp. 2004).

An upward departure is encouraged if the defendant's criminal history category does not adequately reflect the seriousness of his past criminal conduct or the likelihood that he will commit further crimes. Hearne's prior record included three misdemeanor assaults (one with a knife) for which no criminal history points were awarded because the sentences were outside the applicable time period. The probation officer recommended two points for Hearne's 2002 convictions of misdemeanor assault with a deadly weapon, assault on a female, and misdemeanor communicating threats, all of which involved an assault on Lindsey Lentz that occurred before the instant offense. Because Hearne's conviction was on appeal to the North Carolina Superior Court, the district court decided that no criminal points should be awarded for the conviction.

Hearne's criminal record showed a pattern of repeated criminal conduct, particularly assaults, and thus demonstrated that he had a high likelihood of recidivism.[2] In addition, Application Note 8 to USSG § 4A1.2 provides that the sentencing court may consider sentences imposed outside the applicable time period if they are evidence of criminal conduct that is similar to the instant offense. Hearne received no points for three outdated sentences for assault, and the instant offense involved assaults by Hearne against Horne and Lentz. The court may also consider whether the defendant was pending trial or sentencing on another charge at the time he committed the instant offense. USSG § 4A1.3(a)(2)(D). When Hearne committed the instant offense on January 26, 2002, he was pending sentencing for the prior assault on Lentz. We therefore conclude that a one-level upward departure was warranted.

Hearne points out that the district court failed to give specific written reasons for the departure pursuant to § 4A1.3 as are now required.

---

[2]Hearne had been arrested for two rapes, eleven assaults, and three instances of communicating threats; in each case he was acquitted or the charges were dismissed. However, the defendant's arrest record may not be the basis for an upward departure. USSG § 4A1.3(a)(3).

USSG § 4A1.3(c)(2). We note that 18 U.S.C.A. § 3742(f)(2) (West Supp. 2004), provides that, "if the sentence is outside the applicable guideline range and the district court failed to provide the required statement of reasons in the order of judgment and commitment . . . [the court of appeals] shall state specific reasons for its conclusions." In accord with this provision, we have stated the specific reasons why the upward departure was warranted.

We also affirm the court's decision to depart on the separate ground that Hearne's conduct created a risk of death or serious bodily injury to multiple individuals. *See* USSG § 2K2.1, comment. (n.16(4)). Horne testified at sentencing that about ten people were standing in his yard when Hearne began shooting at him. Hearne contends that a departure on this ground was unwarranted because his conduct was adequately considered by the enhancement under § 2K2.1(b)(5) for use of a firearm in connection with another felony, and because he did not injure anyone. His argument fails because the enhancement he received under § 2K2.1(b)(5) was for use of a firearm in connection with his counterfeiting offense; it did not take into account his shooting into a crowd. The departure was based on an encouraged factor and justified by the facts. Because the district court did not provide specific reasons in the judgment order for its departure under § 2K2.1, we have again stated with specificity why the departure was warranted.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*