**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 10-4282**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAVID EARL WATTS, a/k/a High Gear, a/k/a Driver,

Defendant - Appellant.

---

**10-4283**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES BARNARD HAITHCOCK, a/k/a Boss Hog,

Defendant – Appellant.

---

Appeals from the United States District Court for the District of South Carolina, at Florence.  Terry L. Wooten, District Judge. (4:08-cr-00372-TLW-1; 4:08-cr-00372-TLW-5)

---

Argued:  September 21, 2011          Decided:  November 9, 2011

---

Before GREGORY, WYNN, and DIAZ, Circuit Judges.

---

Affirmed by unpublished opinion.  Judge Gregory wrote the opinion, in which Judge Wynn and Judge Diaz joined.

---

**ARGUED**:  Kathy Price Elmore, ORR, ELMORE & ERVIN, LLC, Florence, South Carolina; Gregory Poole Harris, HARRIS & GASSER, LLC, Columbia, South Carolina, for Appellants.  Jimmie Ewing, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF**: William N. Nettles, United States Attorney, Jeffrey Mikell Johnson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

This case is on appeal from appellants' convictions and sentence for one count of conspiring to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 841. Appellants present five claims of error to this Court: (1) the district court improperly denied appellants' motion to suppress evidence seized in connection with a search of appellant Watts's home after the Government lost the search warrant; (2) the district court erroneously denied appellants' motion for a mistrial after the prosecutor improperly relied on statements not in evidence during her closing arguments; (3) the prosecutor unfairly attacked appellants' trial attorneys during the rebuttal argument, depriving them of a fair trial; (4) there was insufficient evidence for the court to attribute 6.3 kilograms of methamphetamine to Watts; and (5) there was insufficient evidence for the court to impose a two-level, "managerial role" enhancement to Watts's sentence. After careful review, we reject each of these arguments and affirm.

I.

Defendant-appellants David Earl Watts and James Barnard Haithcock were, along with several others, indicted, tried, and convicted of one count of conspiring to possess with intent to distribute methamphetamine, in violation of 21 U.S.C § 841. The

3

Government alleged that from 1999 up to indictment, Watts and Haithcock participated in a conspiracy to produce and sell methamphetamine with thirty to fifty other people. The police obtained evidence from a number of sources, including two searches of Watts's home.

Before trial Watts joined co-defendant Flint Ratliff's motion to suppress evidence that was obtained pursuant to the 2003 search of Watts's home on grounds that it violated Watts's Fourth Amendment rights. At the hearing, the Government informed the district court that the search warrant and accompanying affidavit had been lost. After hearing the testimony of Christopher Page, a narcotics officer with the Chesterfield County Sheriff's Office, the court found that the search warrant did exist, that there was sufficient evidence to support a finding of probable cause, and that the Fourth Amendment's particularity requirement was satisfied.

At trial, the court heard from several witnesses, including Watt's ex-wife, Karen Watts ("Karen"). The Government also introduced evidence obtained in a second search of Watts's home conducted in 2005. Appellant Haithcock also took the stand. He testified, inter alia, that he was arrested in May 2008 in a methamphetamine investigation. After spending several days in jail, Haithcock and his attorney met with DEA agents and provided a proffer statement about his methamphetamine use. On

4

cross examination, the prosecutor impeached Haithcock, making extensive use of the proffer statement. The Government referred to the proffer during its closing arguments, arguing that "just based on Mr. Haithcock's statement . . . to the DEA that you could convict each of these defendants . . . ." Also during the prosecution's closing, the Government made several references to defense counsel's argument, calling it a "red herring" defense that is "improper" and mere "speculation." The Government spoke about defense counsel, telling the jury, "They don't want you to focus on the testimony. They don't want you to focus on the evidence," and later, "[L]ook at the way he cross examined every one of these witnesses . . . ." The Government also discussed the plea agreements it made with several witnesses; it told the jury that plea agreements "[are] designed, I submit to you, to force truthful cooperation."

At the sentencing hearing, the district court attributed 6.3 kilograms of methamphetamine to Watts. The court also imposed a two-level enhancement for Watts's leadership role in the conspiracy. Watts was sentenced to 360 months in prison.

## II.

We consider each of appellants' five claims of error in turn.

5

*A. The Lost Search Warrant*

Appellant Watts argues that the district court improperly denied his motion to suppress evidence after the Government admitted that it lost the search warrant. In hearing an appeal of a district court's denial of a motion to suppress, an appellate court reviews findings of fact for clear error and determinations of probable cause de novo. Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Richardson, 607 F.3d 357, 369 (4th Cir. 2010).

The Fourth Amendment generally requires that before searching a home, the police must procure a warrant issued by a neutral magistrate; this warrant must be supported by probable cause and contain a particular description of the place to be searched and the items to be seized. U.S. CONST. amend. IV. Searches conducted without a valid warrant are presumptively unreasonable, Groh v. Ramirez, 540 U.S. 551, 559 (2004), and the exclusionary rule bars a prosecutor from introducing evidence obtained in violation of the Fourth Amendment during its case-in-chief, Davis v. United States, 131 S. Ct. 2419, 2424 (2011). However, an officer acting with an objectively reasonable good-faith belief that the search was in accord with the Fourth Amendment overcomes deficits in probable cause and particularity. See id. Moreover, the Government may also use unconstitutionally obtained evidence to impeach the defendant's

6

testimony. United States v. Leon, 468 U.S. 897, 910 (1984). If an error is found with a district court's ruling, this Court subjects that ruling to harmless error review, asking whether the defect "affect[ed] substantial rights." FED. R. CRIM. P. 52(a). Evidence admitted in violation of the Constitution is harmless if the appellate court finds "the constitutional error was harmless beyond a reasonable doubt." United States v. Abu Ali, 528 F.3d 210, 256 (4th Cir. 2008) (citing Chapman v. California, 385 U.S. 18, 24 (1967)).

In this case, Watts contends that the Government did not meet its burden of proof in demonstrating that the lost warrant both existed and complied with the Fourth Amendment. The Government responds by arguing that it did meet its burden and that in any case, the error was harmless. This Circuit has not had occasion to address the appropriate standard for searches involving a subsequently lost warrant. It is clear that the Fourth Amendment's particularity requirement must be satisfied by the contents of the warrant itself, and not by its supporting documents. Groh, 540 U.S. at 557 (finding a constitutional violation when the affidavit, but not the warrant, was sufficiently particular). But Groh left open the question of whether any evidence besides the warrant itself can be used to prove a missing warrant's existence or contents. The Eleventh Circuit considered this question in United States v. Pratt,

7

where it held that "when a warrant is not in evidence at a suppression hearing, a prosecutor must prove, by a preponderance of the evidence, the missing search warrant's *exact* language describing the place to be searched and the persons or items to be seized." United States v. Pratt, 438 F.3d 1264, 1270 (11th Cir. 2006).

Without ruling on the appropriate legal standard for cases involving lost search warrants, we find that even if the Government violated Watts's Fourth Amendment rights and the district court erred in failing to suppress the evidence collected from the search, the error was harmless. Because only Watts has standing to challenge the search of his home, we do not consider the effect the alleged Fourth Amendment violation had on Haithcock's conviction and sentence.

Over an eight-day trial where more than two dozen witnesses testified, only two made any mention of the first search of Watts's home.[*] One, Investigator Wayne Jordan, told the jury that officers found methamphetamine; the other, Christopher Page, said the police found "several guns," a set of scales, and two bags containing what was later determined to be methamphetamine. None of these facts was necessary to establish Watts's guilt. The fact that Watts possessed methamphetamine

_____

[*] The search at issue here took place on November 24, 2003; a second search occurred at the same location on July 14, 2005.

8

was effectively admitted by the defense during closing arguments when counsel told the jury there was "no doubt" that Watts used methamphetamine. Moreover, the 2005 search of Watts's home, which neither appellant challenges, produced substantially the same evidence against Watts and then some: upon arrival, the police found Karen and Watts (who was not present at the first search) sitting in front of a coffee table with two lines of white powder in front of them; the police also recovered methamphetamine, plastic baggies, digital scales, a security monitor, empty gel caps, empty ephedrine boxes, and a cutting agent. And while we register some concern with respect to the introduction of evidence that there were guns inside Watts's home, we also note that Watts was not charged with any crime relating to the possession of a firearm.

Besides the evidence obtained by the 2005 search, the prosecution also put on nine witnesses who testified that they purchased or received methamphetamine from Watts. Karen and a woman named Jeannie Street both testified that they provided Watts with pseudoephedrine pills for the manufacture of methamphetamine. Ms. Street also said that she allowed Watts to bury tanks of anhydrous ammonia in her yard. Several witnesses also told the jury that they saw Watts making methamphetamine, and three said that Watts himself showed them how to manufacture the drug. In considering the substantial and mostly uncontested

evidence admitted into the record against Watts, we find beyond a reasonable doubt that any Fourth Amendment violation was harmless.

*B. The Motion for a Mistrial*

Appellants contend that it was improper for the Government to refer to Haithcock's proffer statement to the DEA during its closing arguments because that statement was never admitted into evidence. The Fourth Circuit reviews a district court's denial of a motion for a mistrial for abuse of discretion. United States v. Stockton, 349 F.3d 755, 762 (4th Cir. 2003). When the motion concerns the Government's closing arguments, this Circuit requires the application of a two-pronged test: "(1) whether the prosecutor's remarks or conduct was improper, and (2) whether such remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial." Id. (citing United States v. Francisco, 35 F.3d 116, 120 (4th Cir. 1994)). An appellate court also reviews claims of improper closing arguments for harmless error. FED. R. CRIM. P. 52(a). To find the error harmless, this Court "need only be able to say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." United States v. Heater, 63 F.3d 311, 325 (4th Cir. 1995) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)).

10

A fundamental rule of law is that "argument is limited to the facts in evidence." United States v. Wilson, 135 F.3d 291, 298 (4th Cir. 1998). Past inconsistent statements cannot normally be used as substantive evidence, as Rule 802 bars hearsay from being admitted. FED. R. EVID. 802. The defendant's previous statements, however, are not hearsay. FED. R. EVID. 801(d)(2)(A). Relevant, non-hearsay evidence is normally admissible. FED. R. EVID. 402. Here, Haithcock's statement was relevant: it directly contradicted several statements he made during his direct examination. And of course, any party may impeach a witness's testimony. FED. R. EVID. 607. Thus, the statement was straightforwardly admissible. See United States v. DiSantis, 565 F.3d 354, 359 (7th Cir. 2009) (finding no error where the district court instructed the jury that it may consider the defendant's prior inconsistent statements as substantive evidence). The only question is whether it was admitted.

The record indicates that the prosecutor mentioned only one fact from the proffer that Haithcock did not testify to on direct or cross examination: that he had "his attorney, Mr. McBratney" with him when he made the statement. However, we cannot conclude, based on this one minor detail, that the prosecution's closing arguments were improper under Francisco, much less that they prejudicially affected appellants'

11

substantial rights. "[T]o parse through a prosecutor's closing statement for minor infelicities loses sight of the function of our adversary system, which is to engage opposing views in a vigorous manner." United States v. Johnson, 587 F.3d 625, 632-33 (4th Cir. 2009). The district court's denial of appellants' motion for a mistrial, therefore, was proper.

*C. The Government's Closing Arguments*

Appellants next claim that the prosecution's comments during its closing arguments about defense counsel were improper and that the Government bolstered and vouched for its witnesses. A district court has broad discretion with respect to oral arguments. It will be overturned only for abuse of discretion under Stockton's two-part test. See Stockton, 349 F.3d at 762. Appellants did not object to the prosecutor's comments, a fact they concede here. Appellant's Br. 38. When a defendant fails to object at trial, the appellate court reviews only for plain error. United States v. Baptiste, 596 F.3d 214, 226 (4th Cir. 2010).

While courts grant counsel great latitude in presenting their closing arguments, the "guiding principle is that a prosecutor should not strike 'foul blows.'" United States v. Ollivierre, 378 F.3d 412, 418 (4th Cir. 2004), *rev'd on other grounds*, 543 U.S. 1112 (2005). It is therefore "improper for a prosecutor to launch a personal attack upon the defense attorney

12

or upon defense attorneys generally." Id. Here, the comments made by the prosecutor about defense counsel, while pointed, were not personal attacks. It is true that the prosecutor referred to defense counsel's theory as a "red herring defense," and made comments like "They don't want you to focus on the testimony you've heard in this case," and at one point during a sharp back-and-forth, the Government even commented in reference to defense counsel's actions, "It's misleading, Your Honor, and I object." But none of these are personal attacks against the defendant's attorney; they reflect a spirited disagreement with the arguments made by the opposing party and do not concern the attorneys themselves. See Ollivierre, 378 F.3d at 418 (finding that the prosecution's comments, including that defense counsel "tries to weave in distorted facts to try to make his argument," were not improper). Moreover, the comments simply were not attacks under Ollivierre: litigation at times becomes heated, and the comments here do not rise to anything near the level of acrimony necessary to reverse a district court on abuse-of-discretion grounds.

Similarly, the Government did not impermissibly bolster or vouch for its witnesses. Impermissible "[v]ouching occurs when a prosecutor indicates a personal belief in the credibility or honesty of a witness; bolstering is an implication by the government that the testimony of a witness is corroborated by

13

evidence known to the government but not known to the jury." United States v. Sanchez, 118 F.3d 192, 198 (4th Cir. 1997). However, such improper comments do not always require retrial: the issue is whether "the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. (citing United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993)). With respect to vouching, this Court adopted the Tenth Circuit's explanation of the types of comments that are appropriate with regard to plea agreements in closing arguments:

> Presenting evidence on a witness' obligation to testify truthfully pursuant to an agreement with the government and arguing that this gives the witness a strong motivation to tell the truth is not, by itself, improper vouching. . . . Use of the 'truthfulness' portions of [a plea agreement] becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony.

United States v. Collins, 401 F.3d 212, 216 (4th Cir. 2005) (citing United States v. Bowie, 892 F.2d 1494, 1498 (10th Cir. 1990)).

Here, the Government did not improperly vouch. The only statement made with respect to the plea agreements is the prosecution's remark, "[I]t's designed, I submit to you, to force truthful cooperation." This did not suggest the prosecution was able to "monitor and accurately verify the

14

truthfulness" of any testimony; it is instead a general comment implying that the witness has "a strong motivation" to tell the truth. See also United States v. Celestine, 43 Fed.Appx. 586, 596 (4th Cir. 2002) (finding the prosecutor's closing remarks were not improper in part because the phrase "I contend to you" indicates "routine argument, and not the expression of the prosecutor's personal opinion"). As for the charge of bolstering, there is simply no indication the Government ever suggested it had evidence not known to the jury that corroborated any witness's testimony. Appellant's argument, therefore, is rejected.

*D. The Quantity of Methamphetamine*

Turning to his sentence, Watts argues that the district court erred in attributing 6.3 kilograms of methamphetamine to him. This Court reviews a district court's drug quantity finding for clear error. United States v. Kellam, 568 F.3d 125, 147 (4th Cir. 2009). That burden is satisfied when the review of all of the evidence leaves the court "'with the definite and firm conviction that a mistake has been committed.'" Easley v. Cromartie, 532 U.S. 234 (2001) (quoting United States v. United States Gympsum Co., 333 U.S. 364, 395 (1948)).

When a defendant objects to a quantity of drugs, the district court must make an independent, factual determination of the issue. United States v. Williams, 152 F.3d 392, 300 (4th

15

Cir. 1998). In reaching its decision, the district court must find that it is more probable than not that the defendant was responsible for at least the quantity of drugs attributable to him. United States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004). Precise calculations of the amount of drugs are not required; the district court may approximate the quantity to be used for sentencing. United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir. 1992) (quoting 18 U.S.C. § 3742(e) (2003)). A conspirator may be held accountable for all of the drugs attributable to the conspiracy as long as it was reasonably foreseeable that the drugs would be involved in the conspiracy. United States v. Osborne, 345 F.3d 281, 284-85 (4th Cir. 2003) (citing United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993)).

In this case, appellants concede that, because of the conspiracy charge, Watts is liable for the uncontested 2.607 kilograms of methamphetamine attributed to his co-conspirators. Appellant's Br. 50. As for the remaining 3.693 kilograms, the district court relied heavily on the testimony of Karen. In evaluating testimony, "due regard to the opportunity of the district court to judge the credibility of the witnesses" shall be given. Uwaeme, 975 F.2d at 1018. Here, the district court did not err in crediting Karen's testimony, notwithstanding appellants' arguments that the Wattses had a tumultuous

16

relationship and that Karen did not have significant contact with Watts during part of the conspiracy. The district court gave several reasons for finding that Karen's testimony was truthful: it noted that her statements were mostly consistent; that she "substantially incriminat[ed]" herself; that the court observed her demeanor and found her to be credible; that she had a basis to know the facts to which she testified; and that her testimony was credited by the jury. Moreover, the presentence report attributed 15.3 kilograms of methamphetamine to Watts. Rather than taking a heavy-handed approach, the district court "err[ed] on the side of caution," used "every lowest common denominator that [it could] use," and reduced that amount substantially. The drug weight attributed to Watts, therefore, was not erroneous.

E. The Managerial Role Sentencing Enhancement

Finally, appellant Watts argues that there was insufficient evidence for the court to impose a two-level managerial enhancement at sentencing because Watts, rather than having a leading or supervisory role in the conspiracy, was merely one member of a "loose-knit" organization that bought and sold methamphetamine. The Fourth Circuit reviews a district court's decision to apply a sentencing adjustment for clear error. United States v. Sayles, 296 F.3d 219 (4th Cir. 2002).

17

A district court may impose a two-level enhancement against a defendant that it finds acted as "an organizer, leader, manager, or supervisor" of the conspiracy. U.S.S.G. § 3B1.1(c). In reaching its decision, district courts look to seven factors:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

United States v. Cameron, 573 F.3d 179, 1984 (4th Cir. 2009) (citing U.S.S.G. § 3B1.1, cmt. n.4). Here, the factors point in favor of a finding that Watts acted in a managerial role. To begin with, Watts had significant decision-making authority, acting as a supervisor on a number of occasions: He, for example, ordered Karen to purchase pseudoephedrine pills and to "bubble" liquid methamphetamine and would intermittently forbid Karen from entering the house where he and the other co-conspirators were cooking methamphetamine. Watts also taught several of his co-conspirators how to make the drug, including David Flake, Shaun Runyan, and Robert Rowell. Finally, on one occasion, a woman named Michelle Goodwin visited Watts to purchase methamphetamine; Watts directed a woman to pull up Goodwin's shirt to see whether she had a recording device. In looking at the record as a whole, it is clear from the testimony

18

that Watts acted as an organizer and leader in the conspiracy. The district court did not commit clear error in applying the two-level managerial enhancement.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED