**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 19-7748**

───────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ELLIOTT B. GRAHAM, a/k/a Thug,

Defendant - Appellant.

───────────

Appeal from the United States District Court for the District of South Carolina, at Florence. Terry L. Wooten, Senior District Judge. (4:05-cr-00770-TLW-3; 4:16-cv-02275-TLW)

───────────

Argued:  March 9, 2023                                        Decided:  May 3, 2023

───────────

Before WILKINSON, AGEE, and HEYTENS, Circuit Judges.

───────────

Reversed and remanded by published opinion. Judge Heytens wrote the opinion, in which Judge Wilkinson and Judge Agee joined. Judge Wilkinson wrote a concurring opinion.

───────────

**ARGUED:** Emily Deck Harrill, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. William Jacob Watkins, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee. **ON BRIEF:** Adair F. Boroughs, United States Attorney, Columbia, South Carolina, Katherine Hollingsworth Flynn, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee.

───────────

TOBY HEYTENS, Circuit Judge:

More than 15 years ago, Elliott Graham pleaded guilty to kidnapping and using a firearm during a crime of violence. It is now clear kidnapping is not a crime of violence under the relevant statute, and the three "critical record documents" that govern our analysis do not show Graham's plea to the firearm charge was "expressly predicated upon" any other offense. *United States v. Crawley*, 2 F.4th 257, 265, 267 (4th Cir. 2022). We thus reverse the district court's denial of Graham's motion to vacate his firearm conviction and remand for resentencing.

I.

In 2005, Graham and three other men decided they wanted the expensive tire rims on a nearby parked car. The men approached the car's owner, who declined their unsolicited sales offer. At that point, the men pulled a gun, ordered the owner into the car, drove across state lines, and "hit [the owner] with a revolver in the face and threatened they would take him in the woods and kill him by burning him with gasoline" unless he helped them remove the rims. JA 51. After the victim relented, Graham and his compatriots let him go and told him to "run into the woods." JA 52.

Graham was originally charged with four federal offenses: (1) carjacking; (2) kidnapping; (3) using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (the Section 924(c) charge); and (4) possessing a firearm after being convicted of a felony. The parties agreed Graham would plead guilty to the kidnapping and Section 924(c) charges, and the government would dismiss the carjacking and felon in possession charges. Neither the indictment nor the plea agreement specified a predicate

"crime of violence" for the Section 924(c) charge, and the plea agreement contained no agreed upon factual statement.

At the plea hearing, the district court asked for "a summary of the plea agreement." JA 38. The prosecutor responded Graham had "agree[d] to plead guilty to counts 10 and 11 of this indictment, which charge kidnapping, as well as a 924(c) violation in connection with the kidnapping." *Id.* In response to questions from the court, Graham confirmed those were "the terms of [his] plea agreement" and "represent[ed] the full understanding [he] ha[d] with the government." JA 40.

The district court then asked the prosecutor for a "factual presentation." JA 51. After summarizing the facts recounted above, referencing Graham's co-defendants, and stating Graham "was the one who had the firearm," the prosecutor stated: "And the car was made outside South Carolina. This is a kidnapping, so it doesn't matter." JA 52.

The district court then asked Graham about the facts. Because this exchange is critical to our analysis and has the "merit of brevity," *Foster v. Goddard*, 66 U.S. 506, 507 (1861), we quote it in full:

| | |
|---|---|
| *The Court*: | Mr. Graham, you heard what the Assistant U.S. Attorney says you did in this case. Do you agree you participated in the kidnapping and used the gun? |
| *Graham*: | Yes, sir. |
| *The Court*: | Did you have the gun? |
| *Graham*: | Yes, sir. |
| *The Court*: | You and others kidnapped or took [the victim] into custody or took him, kidnapped him, forced him into a car in an effort to take these rims from him, is that correct? |
| *Graham*: | Yes, sir. |

3

| | |
|---|---|
| *The Court*: | And you had a firearm in your possession when that was done? |
| *Graham*: | Yes, sir. |
| *The Court*: | Let me ask you, Mr. Graham, are you in fact guilty of this charge? |
| *Graham*: | Yes, sir. |
| *The Court*: | After listening to all that I've told you and explained to you, Mr. Graham, and after having answered my questions, how do you now plead to these two charges, kidnapping and the gun charge, guilty or not guilty? |
| *Graham*: | Guilty, sir. |

JA 53. The district court accepted Graham's plea and sentenced him to 260 months of imprisonment followed by five years of supervised release.

Just over a decade later, Graham filed a handwritten pro se motion to vacate his Section 924(c) conviction based on intervening authority. The district court denied Graham's motion. The court acknowledged it is now clear "kidnapping is not a § 924(c) predicate offense." JA 73; see *United States v. Walker*, 934 F.3d 375, 379 (4th Cir. 2019) (so holding). But the court concluded Graham's Section 924(c) conviction remained valid because "the factual basis for [Graham's] guilty plea involved both carjacking and kidnapping" and "his § 924(c) conviction is related to a carjacking, which the Fourth Circuit has held is a valid § 924(c) predicate." JA 73–74, 76; see *United States v. Evans*, 848 F.3d 242, 247–48 (4th Cir. 2017) (so holding about the federal carjacking statute).

II.

Federal law allows a sentencing court to vacate a Section 924(c) conviction that was not supported by a valid predicate offense. 28 U.S.C. § 2255(a); see, *e.g.*, *United States v. Melaku*, 41 F.4th 386, 389–95 (4th Cir. 2022). The government has raised no issues of

4

procedural default or undue delay. Nor is there any question that under these circumstances, Graham may rely on (and benefit from) decisions that issued years after Graham pleaded guilty. See *In re Thomas*, 988 F.3d 783, 786, 788–89 (4th Cir. 2021). We thus must decide this case the same way we would if Graham had pleaded guilty today.

The parties agree *United States v. Crawley*, 2 F.4th 257 (4th Cir. 2022), governs our analysis. There, this Court affirmed the denial of relief to a defendant who pleaded guilty to a Section 924(c) violation "expressly based" on both a "valid" predicate and an "invalid" one. *Id.* at 263. Indeed, in *Crawley*, the indictment, plea agreement, and plea hearing transcript all referenced a valid Section 924(c) predicate (a drug trafficking offense) and an invalid one (conspiracy to commit Hobbs Act robbery). See *id.* at 260–61, 267. Under those circumstances, this Court concluded "Crawley had no reason to expect . . . a windfall based on later developments in the law that would invalidate one of the two predicates supporting his § 924(c) conviction." *Id.* at 267.

Here, unlike in *Crawley*, neither the indictment nor Graham's plea agreement "expressly" mentioned any predicate offense for the Section 924(c) count. Standing alone, that is not a problem because the government need not "specify a specific § 924(c) predicate offense in the § 924(c) charge in the indictment," nor "separately charge or convict the defendant[] of the § 924(c) predicate offense." *United States v. Randall*, 171 F.3d 195, 208 (4th Cir. 1999). But the absence of that information from the indictment or plea agreement here means those documents are unhelpful in identifying any predicate offenses on which Graham's guilty plea was "expressly based." *Crawley*, 2 F.4th at 263.

5

For that, we must turn to the plea transcript, the only other "critical record document[]" either side asks us to consider. *Crawley*, 2 F.4th at 267.[1] And that transcript makes clear—over and over—that Graham's guilty plea on the Section 924(c) offense was "expressly based" on one and only one predicate: kidnapping. *Id.* at 263.

The 20-page transcript of Graham's plea hearing contains 12 references to "kidnapping." Upon being asked "for a summary of the plea agreement," the first thing the government said was "Graham agrees to plead guilty to . . . kidnapping, as well as a 924(c) violation *in connection with the kidnapping*." JA 38 (emphasis added). The district court also repeatedly asked Graham about his possession of a firearm during "the kidnapping." JA 53. In particular, the court said, "You and others *kidnapped* or took [the victim] into custody or took him, *kidnapped* him, forced him into a car in an effort to take these rims from him, is that correct?" *Id.* (emphasis added). After Graham replied, "Yes, sir," the court clarified, "And you had a firearm in your possession when that was done?" *Id*. Graham confirmed as much—and only as much.

In contrast, the sole use of "carjacking" during the plea hearing came when the prosecutor was describing what Graham had agreed to do in the future—that is, "cooperate with the United States Attorney's office in our investigation of violent crimes and other

---

[1] Although the district court briefly referenced proceedings involving Graham's co-defendants, the government concedes any reliance on such proceedings would have been error and insists the court did not so rely. See Oral Arg. 13:34–14:20. We take the government at its word, and thus consider no such materials. We also do not consider Graham's presentence report, which neither party asks us to do. See Oral. Arg. 15:18–23 (government counsel confirming it is not relying on the PSR).

unlawful activity, including debriefings concerning his knowledge of armed robberies, carjacking and other unlawful activity." JA 39. In addition, when describing Graham's offense conduct, the prosecutor specifically disclaimed any relevance of whether the car had been manufactured out of state—a fact that would have been material to any federal carjacking charge—by stating: "This is a kidnapping, so it doesn't matter." JA 52; compare 18 U.S.C. § 2119 (carjacking requires "tak[ing] a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce"), with § 1201(a) (kidnapping has no such requirement). Nor was Graham asked at any point during the plea hearing whether he possessed a firearm in connection with a carjacking or informed of the elements of a federal carjacking charge.

Seeking to paper over this problem, the government insists the kidnapping to which Graham pleaded guilty and the carjacking to which he did not were "inextricably intertwined" and "a single event." U.S. Br. 14–15; see Oral Arg. 31:00–31:03 (describing this case as involving "one common nucleus of operative fact"). But Section 924(c) requires a predicate "*crime*" rather than a predicate *event*, 18 U.S.C. § 924(c)(1)(A) (emphasis added), and it is a commonplace that the same event can give rise to multiple offenses. And *Crawley* says a guilty plea "expressly based on" an invalid predicate must also be "expressly based on" at least one valid "predicate *offense*." 2 F.4th at 263 (emphasis added).

For this reason, the government errs in relying on cases involving jury verdicts rendered after trials. See U.S. Br. 13–15 (citing six decisions other than *Crawley*, all involving jury trials rather than guilty pleas). In that context, there is a full record, and it

7

makes sense to ask what the jury's verdict "necessarily" was based on or what any "rational juror[s]" would have found based on the evidence before them. *United States v. Reed*, 48 F.4th 1082, 1090 (9th Cir. 2022) (first quotation); *United States v. Cannon*, 987 F.3d 924, 948 (11th Cir. 2021) (second quotation). When a defendant pleads guilty, in contrast, there is neither an evidentiary record nor a decision by the defendant's peers. The only basis for depriving Graham of his liberty is what he "admitted"—a word this Court used eight times in *Crawley*—not what Graham *might* have been willing to admit or what the court or a jury hypothetically *could* or *would* have found had the issue been before them. See 2 F.4th at 260–65.

Shifting gears, the government insists Graham's Section 924(c) conviction remains valid because he "admitted to facts supporting all the elements of the carjacking at his plea colloquy." U.S. Br. 15. But even if that would be enough (a point we need not decide), it is not true here. To begin, carjacking requires "tak[ing] a motor vehicle that *has been* transported, shipped, or received in interstate commerce." 18 U.S.C. § 2119 (emphasis added). Graham's acknowledgment that he and his confederates drove across state lines after taking the car does not satisfy that requirement, which by its plain language focuses on the car's status at the time of the taking. See *United States v. Cobb*, 144 F.3d 319, 321 (4th Cir. 1998) ("Section 2119 applies only to the forcible taking of motor vehicles that *have been* 'transported, shipped, or received in interstate or foreign commerce.'" (emphasis added)). And, as noted previously, Graham was neither asked nor required to admit the stolen car was "made outside South Carolina" because—before he was ever asked to speak—the prosecutor said it "doesn't matter" where the car was made. JA 52.

8

Nor did Graham admit to satisfying the federal carjacking statute's somewhat unusual mens rea requirement. Like most robbery statutes, the federal carjacking statute requires that the defendant do a certain thing (obtain another's property) in a particular way (by using actual or threatened force). Compare 18 U.S.C. § 1951(b)(1) (defining robbery for purposes of 18 U.S.C. § 1951(a)), with § 2119 (federal carjacking statute). But the carjacking statute adds another requirement: To violate it, a defendant must "take[] a motor vehicle" "with the intent to cause death or serious bodily harm." § 2119. This requirement is satisfied if—but only if—"at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)." *Holloway v. United States*, 526 U.S. 1, 12 (1999).

The problem for the government is Graham never admitted—"expressly" or otherwise—to having such intent. Instead, the government relies on Graham's failure to dispute the prosecutor's statement that he pointed a gun at the victim while obtaining the car and both hit the victim with the gun and threatened to kill him by burning him with gasoline after the car had been obtained.

That is reprehensible conduct. And if the question before us was whether Graham admitted to the elements of robbery or battery, we would have little trouble in concluding he did.[2] But Graham's admissions about what he did—particularly after he was inside the

---

[2] Because the government has never suggested Graham's Section 924(c) conviction was "expressly predicated" on any offenses other than kidnapping or carjacking, we consider no such possibilities. *Crawley*, 2 F.4th at 265.

car—do not speak to what he intended "at the moment [he] demanded or took control" of the victim's car. *Holloway*, 526 U.S. at 12; see *United States v. Small*, 944 F.3d 490, 498 (4th Cir. 2019) (emphasizing the "distinct[ion]" between a "'by force and violence or by intimidation' *actus reus* requirement" and the federal carjacking statute's "*mens rea* requirement" (quoting § 2119)). Under the federal carjacking statute standard, *that* is the intent that matters, and it is an issue on which the "critical record documents" contain no admission—much less an express one—from Graham. *Crawley*, 2 F.4th at 267; see *Small*, 944 F.3d at 498 (noting a defendant who is "unwilling to follow through on an intimidating bluff" has not violated the federal carjacking statute).[3]

*      *      *

We understand the government's frustration about the context in which this motion arises. At the time of the plea agreement and plea hearing, everyone involved assumed the

---

[3] At oral argument, the government insisted the district court made a "finding of fact" that Graham's "Section 924(c) plea was based in part on carjacking," which is reviewed only for clear error. Oral Arg. 12:19–12:45. That assertion is new, dubious, and ultimately beside the point. Beyond quoting a nonprecedential decision for the unremarkable proposition that "[i]dentifying the predicate offense supporting a § 924(c) conviction is a fact-intensive inquiry," the government's brief did not assert the district court made any factual findings or that the clear error standard applied. U.S. Br. 9 (quoting *United States v. Alston*, 855 Fed. Appx. 895, 895 (4th Cir. 2021) (per curiam)). To the contrary, the government's brief repeatedly framed its position as "[t]he district court did not err." U.S. Br. 6, 7, 10, 16, 18. This Court's opinion in *Crawley* never mentioned the clear error standard, nor has the government cited any case applying that standard to this sort of question. At any rate, the government has expressly disclaimed reliance on any materials outside the indictment, the plea agreement, and the plea hearing, see note 1, *supra*, and, as already explained, we see nothing in those "critical record documents" that could support a finding Graham's plea was—when entered—"expressly based on" carjacking. *Crawley*, 2 F.4th at 263.

10

kidnapping to which Graham pleaded guilty was also a crime of violence under Section 924(c) and that nothing concrete turned on whether his plea on the Section 924(c) charge was "expressly predicated upon" another qualifying offense as well. *Crawley*, 2 F.4th at 265. As the government acknowledged at oral argument, however, procedural fairness requires we apply the same rules to both sides. See Oral Arg. 15:50–16:54. Just as the government benefits when intervening judicial decisions improve its litigating position years after the fact, it must accept when those decisions do the opposite. The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

*SO ORDERED*

WILKINSON, Circuit Judge, concurring:

I concur in Judge Heytens's thoughtful majority opinion because we are bound by past decisions of the Supreme Court and those of this court that necessarily followed from them. I worry, however, that those precedents have left an incomplete whole. Worse, they run counter to the role that facts are meant to play in criminal sentencing, and they produce results that are simply inexplicable.

In the wake of *United States v. Davis*, 139 S. Ct. 2319 (2019), courts are now required to employ the so-called "categorical approach" to determine whether an offense qualifies as a crime of violence under 18 U.S.C. § 924(c). Under this approach, courts must "focus[] on the *elements* of the prior offense rather than the *conduct* underlying the conviction," *United States v. Taylor*, 979 F.3d 203, 207 (4th Cir. 2020) (internal quotation marks omitted), thereby disregarding "how the defendant actually committed his crime," *Davis*, 139 S. Ct. at 2326.

The categorical approach comes into play here because Elliot Graham pled guilty to a § 924(c) offense predicated on kidnapping. In *United States v. Walker*, however, we held that kidnapping "does not categorically qualify as a crime of violence," 934 F.3d 375, 379 (4th Cir. 2019), thus rendering Graham's original § 924(c) predicate invalid. Graham subsequently challenged his § 924(c) conviction, leading to the case before us now.

The categorical approach thus underlies this entire case. Despite its simple articulation, that approach has proven difficult to apply and questions linger regarding its attendant consequences. I would suggest only this: While the categorical approach has a

12

preclusive legal effect as to predicate crimes of violence, it need not affect the factual foundation of the final sentence.

## I.

The categorical approach has an undeniable legal effect on the law and sentencing. *See, e.g.*, *Taylor v. United States*, 495 U.S. 575, 588–89 (1990); *Johnson v. United States*, 576 U.S. 591, 604–05 (2015); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1216–17 (2018); *United States v. Davis*, 139 S. Ct. 2319, 2326–32 (2019). A crime of violence enhancement is rendered invalid for want of a predicate. 18 U.S.C. § 924(c). The career offender designation cannot be applied in the absence of previous violent felonies. *Id.* § 924(e)(1). An aggravated felony subjects an alien to removal in a discrete set of cases. 8 U.S.C. § 1227(a)(2)(A)(iii). There is no question the categorical approach, regardless of its merits or demerits, has definitive legal consequences. Its asserted practical advantage is one of efficiency, allowing sentencing determinations to be made without relitigating the particulars of long past predicates.

Should the legal force of the categorical approach affect subsequent non-predicate trial court factfinding? I think not. To be blunt, the categorical approach has too often thwarted Congress's attempts to punish the most violent criminal behavior most strictly. Take this case for example. After forcing the victim into the backseat of a car at gunpoint, Graham hit the victim in the face with his gun. He then threatened to take the victim "in the woods and kill him by burning him with gasoline." J.A. 51. Once the victim submitted to their demands, Graham and his confederates released him, telling him to run into the

13

woods. All involved agreed it was Graham who "had the firearm" during these events. J.A. 52.

How can this not be a crime of violence? There is something very wrong here. We now find ourselves in an exercise far removed from our typical work: Ignore the particulars of the case before us and fault the district court for considering them. As this case illustrates, the chief beneficiaries of the categorical approach are so often the most violent offenders whose own conduct escapes examination because someone else's far less culpable conduct may theoretically be subject to prosecution some other day.

There are limits to the miles that sentencing practice can travel beyond common sense. Whether the benefits of the categorical approach are worth its costs is above my pay grade. The Supreme Court has repeatedly determined that this approach is the law. Questions yet remain, however, about its effect on the facts where crime of violence predicates are not at issue. In cases like this one, what latitude do district judges retain after a categorical appellate holding to consider the actual violence of a crime? To what extent can trial judges still weigh the facts in crafting a sentence? Or does the categorical approach suggest that they downplay facts or even ignore them? I am concerned that district courts, when faced with an appellate holding that a crime is not categorically violent, may in some ways feel constrained from assessing the facts even outside the specific context of crime of violence predicates.

## II.

There is a way to avoid the problem, one which may reach the same sentencing result, but through different means. I do not think the apparent legal focus of the categorical

14

approach has rendered immaterial the facts of the case or diminished the role of the district court in finding and weighing them. To that end, the facts of a violent crime remain relevant in two important ways: First, facts still matter for calculating an appropriate sentencing guidelines range. Second, facts matter in determining whether the violent crime warrants an upward departure or variance from this range. A crime's categorical designation stands as no impediment to these traditional district court factfinding functions or to a trial court's ability to impose a sentence that it deems right and just. In saying this, I only point out the obvious, but, then again, the obvious can sometimes become the obscure.

## A.

The sentencing guidelines themselves, the governing statutory framework, and our appellate review of sentencing all suggest the categorical approach should not be used to detract from the actual facts of the case. In shielding our eyes to facts, the categorical approach, notwithstanding its asserted virtues, goes against the grain.

When district courts calculate sentencing guidelines ranges, as opposed to deciding whether a statutory enhancement applies, there is nothing mandating that they apply the categorical approach. From their inception, the sentencing guidelines have focused on the facts. When the Sentencing Commission first promulgated its guidelines, the Commission was sure to "blend[] the constraints of the offense of conviction with the reality of the defendant's actual offense conduct in order to gauge the seriousness of that conduct for sentencing purposes." William W. Wilkins, Jr., *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C. L. Rev. 495, 497 (1990).

15

The statutory provisions governing sentencing likewise require courts to look to the facts. Crucially, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. In limiting the district court's factual inquiries, the categorical approach comes very close to being a forbidden limitation.

Further, 18 U.S.C. § 3553(b)(1) asks the court to determine whether "there exists an aggravating or mitigating circumstance" surrounding the offense. Similarly, 18 U.S.C. § 3553(f) requires the court to calculate the defendant's criminal history points, *id.* § 3553(f)(1)(A), examine whether the defendant used violence in connection with the offense, *id.* § 3553(f)(2), determine if the offense resulted in death or serious bodily injury to any person, *id.* § 3553(f)(3), and decide whether the defendant was "an organizer, leader, manager, or supervisor of others in the offense," *id.* § 3553(f)(4). All of these provisions point in the same direction: The sentencing court not only may but indeed must consult the defendant's actual conduct to calculate an appropriate guidelines range.

Appellate review of the calculated range is justifiably deferential. A sentence within that range is considered presumptively reasonable, *Rita v. United States*, 551 U.S. 338, 347 (2007), and "a defendant's disagreement" with the range "is insufficient to overcome the district court's discretion," *United States v. Swain*, 49 F.4th 398, 403 (4th Cir. 2022). Our review, moreover, requires the sentencing court to conduct "an individualized assessment based on the facts before the court." *United States v. Lewis*, 958 F.3d 240, 243 (4th Cir. 2020) (internal quotation marks omitted).

16

Rather than invite the categorical approach to distort reality, the sentencing guidelines, the governing statutes, and our deferential standard of review all maintain a clear focus on the actual conduct of the offense, and for good reason. Facts play an indispensable role in sentencing. To serve the ends of justice, our "federal judicial tradition" treats "every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).

The categorical approach is antithetical to this principle, resulting in an inescapable tension between sentencing, which demands we consider reality, and the categorical approach, which demands we ignore it. In the daily work of calculating sentencing ranges, reality must prevail. A sentencing judge should therefore not reduce the guidelines range based on the categorical approach where the offense or criminal record was patently violent. Of course germane statutory enhancements may not apply due to governing precedent, but district courts need not allow categorical holdings to influence sentences where the courts have not required it. Given all the infirmities of the categorical approach, it should be limited strictly to its particular context lest it further erode the basic factual foundation of criminal sentencing.

## B.

Facts also play an integral part in deciding whether to depart from the calculated range. District judges "may impose an upward variance from a defendant's Guidelines range if it is justified by the § 3553(a) factors, as considered under the totality of the circumstances," and any such variance is reviewed for abuse of discretion. *United States v.*

17

*McKinnie*, 21 F.4th 283, 288–89 (4th Cir. 2021); *see also* U.S.S.G. § 4A1.3 (allowing upward departures where "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history"). The Supreme Court has admonished appellate judges not to treat variances as presumptively unreasonable, but instead to "give due deference to the district court's decision." *Gall v. United States*, 552 U.S. 38, 51 (2007). Protecting the ability to deviate from the range, based on the facts of the offense and the facts of the defendant's criminal record, evinces a judge's historic discretion.

"[F]ully discretionary sentencing" has "prevailed in the federal courts from the Founding until enactment of the Sentencing Reform Act of 1984." Michael W. McConnell, *The* Booker *Mess*, 83 Denv. U. L. Rev. 665, 679 (2006). Our judicial system has a "long history of discretionary sentencing, which often turns on facts found by judges." Stephanos Bibas, *Judicial Fact-Finding and Sentence Enhancements in A World of Guilty Pleas*, 110 Yale L.J. 1097, 1122 (2001).

Remarking on this discretion, other courts have noted that "district judges may and should use their sound discretion to sentence . . . on the basis of reliable information about the defendant's criminal history even where strict categorical classification of a prior conviction might produce a different guideline sentencing range." *United States v. Carter*, 961 F.3d 953, 954 (7th Cir. 2020). Thus even when a statutory enhancement is inapplicable, the "law leaves much to 'the judge's own professional judgment.'" *United States v. Powers*, 40 F.4th 129, 137 (4th Cir. 2022) (quoting *Rita*, 551 U.S. at 356).

18

A sentencing judge retains wide latitude to impose the sentence he or she deems appropriate. Any legal approach that inflexibly limits a judge's discretion therefore clashes with longstanding principles of judicial authority and independence. *See United States v. Booker*, 543 U.S. 220, 234 (2005) (invalidating mandatory nature of sentencing guidelines in part because they limited a judge's ability to depart from guidelines range). Courts remain at liberty to opt for variances that reflect actual conduct rather than artificial hypotheticals. A judge may thus impose an upward variance where a predicate crime was committed violently even if the categorical approach forbids pertinent statutory enhancements.

### III.

I fear the categorical approach portends a shift in sentencing authority from the district to the appellate courts. In changing questions of fact to matters of law, it invites the circuit courts to fine tune sentencing decisions.

That is a mistake. The "sentencing judge is in a superior position to find facts and judge their import . . . in the individual case." *Gall*, 552 U.S. at 51. District judges remain the engine of our sentencing scheme for several wise reasons. The district judge sits closer to the action, as he or she "sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Id.* Moreover, the "sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him." *Id.* at 51–52. We would do well to remember what the legal focus of the categorical approach has obscured: Real facts presented in real cases with real people form the bedrock of our criminal justice system. Trial court

discretion in sentencing is an attendant consequence of that system, and it is one to which we should repair when wayward applications of the law threaten to lead us astray.

In sum, the categorical approach does not deny the district court its ultimate discretion nor does it deprive the facts of their force. Even if a statutory enhancement under § 924(c) does not apply because of the categorical approach, as is the case here, judges may in their discretion calculate a guidelines range or grant upward variances based on the violent nature of the criminal activity. For the reasons discussed above, exercising such discretion would be consistent with Supreme Court and circuit precedent. Even if the categorical approach renders violent predicates legally invalid, district courts are at liberty to sentence on the violent character of the cases that come before them.