**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 23-4285**

───────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DOUGLAS DAMON WHITLEY,

Defendant - Appellant.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonie M. Brinkema, District Judge.  (1:21-cr-00227-LMB-1)

───────────

Argued:  May 10, 2024                    Decided:  June 28, 2024

───────────

Before WILKINSON, NIEMEYER, and QUATTLEBAUM, Circuit Judges.

───────────

Affirmed by published opinion.  Judge Quattlebaum wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

───────────

**ARGUED:** Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Joseph Attias, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Geremy C. Kamens, Federal Public Defender, Valencia D. Roberts, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

───────────

QUATTLEBAUM, Circuit Judge:

A federal jury convicted Douglas Damon Whitley of Hobbs Act robbery, federal carjacking and a firearm offense in connection with his theft of a Peloton delivery van and its contents. With respect to his Hobbs Act robbery and federal carjacking convictions, the district court sentenced Whitley to concurrent 84-month prison terms. On direct appeal, Whitley argues that Hobbs Act robbery is a lesser included offense of carjacking, such that his convictions and sentences for both offenses violate the Double Jeopardy Clause. He also argues that there was insufficient evidence of the specific intent needed to convict him of federal carjacking. We disagree with both arguments and affirm the district court's judgment.

I.

A.

A little after 6:00 a.m. on August 25, 2021, a security camera captured Whitley and his girlfriend, Kindal Robinson, leaving their Washington, D.C., apartment with their infant child. Whitley wore a white t-shirt, black pants with a white stripe down the side and a gray backpack. Whitley, Robinson and the baby left the apartment complex in a black Toyota Camry. About an hour later, Robinson's cell phone records placed her across the street from a Peloton warehouse in Fairfax County, Virginia. Half an hour after that, Peloton employees Brandon Hawkins and Leonel Munoz left the warehouse in a Peloton delivery van. The van, which bore Maryland license plates, carried eight Peloton bikes and various equipment that

2

Hawkins and Munoz were to deliver to customers in and around D.C. Hawkins drove the van while Munoz sat in the front passenger seat.

Shortly after leaving the warehouse, Hawkins pulled the van into a shopping center parking lot so Munoz could buy food at a 7-Eleven. Security footage obtained from nearby businesses shows a black Toyota Camry following the van into the parking lot. After Hawkins parked the van, Munoz headed inside the 7-Eleven while Hawkins stayed in the van. Meanwhile, the Camry circled the parking lot before coming to a stop behind the parked van. A man wearing a white shirt and black pants with a white stripe exited the front passenger side of the Camry. Then, the man approached the passenger side of the van.

Hawkins testified that the man opened the passenger side door and climbed inside. Hawkins recalled the man wearing a white t-shirt, a black bucket hat and a camouflage neck gaiter covering his nose and mouth. According to Hawkins, the man was also holding a gray backpack. Hawkins testified that the man pulled a firearm out of the backpack and pointed it at Hawkins' torso. He said the man told him, "don't touch anything," and to "get the f*** out of the van." J.A. 59. Hawkins exited the van, leaving behind a company cell phone and his and Munoz's personal cell phones. Hawkins immediately walked toward a Wells Fargo adjacent to the 7-Eleven because, according to his testimony, he believed the bank would have security cameras that would capture the incident if anything were to happen to him. The security footage shows the Camry then leaving the parking lot with the van following closely behind.

After the van left, Hawkins went inside the 7-Eleven to find Munoz. Though several workers and customers were present, Hawkins did not ask for assistance or tell anyone of

3

the incident. Instead, Hawkins called Munoz over and privately told him that the van had been stolen. While Peloton's policy required employees to remain at the scene of an incident and call the police, Hawkins and Munoz began walking back to the warehouse. A coworker passing by gave the men a ride the rest of the way. Once back at the warehouse, Hawkins told management of the incident, and management contacted the police. The police came to the warehouse and interviewed Hawkins, who provided them with a description of the suspect's clothing and backpack.

Using security footage of the incident, law enforcement traced the Camry's license plate to Robinson's mother, who was listed as living at the same D.C. address as Whitley and Robinson. The day after the incident, officers located the Camry at the address, where they encountered Whitley and Robinson on the street. Like the suspect described by Hawkins, Whitley was wearing a camouflage neck gaiter. During an investigative detention, Robinson admitted to officers that she had driven the Camry in the shopping center parking lot the previous day. With Robinson's consent, officers then searched the apartment but did not find any firearms. Then, after obtaining a search warrant for the Camry, the officers found a black bucket hat in the trunk. Police later found the emptied Peloton van in Maryland. They determined that some of the Peloton bikes had been sold online to unsuspecting purchasers. Police never found the firearm described by Hawkins.

B.

A federal grand jury returned an indictment against Whitley and Robinson. The indictment charged both with Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2, based on the theft of "a Peloton delivery truck, eight Peloton bike units, one Peloton

4

company iPhone, and assorted mats, shoes, resistance bands, earbuds, weights and touch screens." J.A. 14–15. It also charged them with carjacking, in violation of 18 U.S.C. §§ 2119 and 2, based on the theft of the van. The indictment individually charged Whitley with violating 18 U.S.C. § 924(c) by using, carrying and brandishing a firearm during and in relation to a crime of violence. Whitley and Robinson pleaded not guilty and proceeded to a joint jury trial, where the defense argued that Whitley and Hawkins staged the incident. The jury found them both guilty of all charges.

In a motion for judgment of acquittal under Federal Rule of Civil Procedure 29, Whitley argued that Hobbs Act robbery is a lesser included offense of federal carjacking, such that punishing him for both offenses would violate the Double Jeopardy Clause. Whitley also argued that the government failed to produce sufficient evidence of his specific intent to cause death or serious bodily harm, an essential element of federal carjacking. The district court denied Whitley's motion in a written order. It determined that Hobbs Act robbery is not a lesser included offense of carjacking under the test from *Blockburger v. United States*, 284 U.S. 299 (1932). It likewise rejected Whitley's challenge to the sufficiency of the evidence underlying his carjacking conviction, explaining that a reasonable jury could have found that Whitley had the specific intent to kill or seriously injure Hawkins if necessary to take the van.

The district court sentenced Whitley to concurrent terms of 84 months' imprisonment on the Hobbs Act robbery and carjacking counts and a mandatory consecutive term of 84 months' imprisonment on the firearm count, resulting in a total prison term of 168 months. It also sentenced Whitley to a total of 5 years of supervised release and ordered him to pay

5

$16,000 in restitution, for which Robinson was jointly and severally liable.[1] Whitley timely appeals his criminal judgment, raising the same double jeopardy and sufficiency challenges he raised below.[2]

## II.

Whitley raises two arguments. First, he argues that his convictions and sentences for Hobbs Act robbery and federal carjacking violate the Double Jeopardy Clause because the former is a lesser included offense of the latter, such that he is being punished for the same offense twice. Second, he insists that insufficient evidence supports the jury's guilty verdict on the federal carjacking count because his mere brandishing of a firearm does not demonstrate a specific intent to cause death or bodily harm. We consider these arguments in turn.

### A.

The Double Jeopardy Clause "prohibits the government from subjecting a person to 'multiple punishments for the same offense.'" *United States v. Schnittker*, 807 F.3d 77, 81

---

[1] The district court granted Robinson's post-trial motion for judgment of acquittal with respect to the jury's guilty verdict on the federal carjacking charge. The district court concluded that the government had not proven that Robinson had the specific intent to kill or cause serious bodily injury necessary to prove federal carjacking. It denied her motion with respect to the guilty verdict on the Hobbs Act robbery charge. The district court sentenced Robinson to seven days' incarceration followed by three years' supervised release.

[2] We have jurisdiction to hear Whitley's appeal under 28 U.S.C. § 1291.

(4th Cir. 2015) (quoting *Ohio v. Johnson*, 467 U.S. 493, 498 (1984)).[3] It "attaches if the subject offenses 'are in law and in fact the same offense.'" *Id.* (quoting *United States v. Crew*, 538 F.2d 575, 577 (4th Cir. 1976)). To determine whether two offenses charged under separate statutes are the same offense, courts apply the *Blockburger* test. *See id.*; *Blockburger*, 284 U.S. at 304. The *Blockburger* test "is essentially one of legislative intent" and "focuses on the formal elements of the two crimes, finding them to be different offenses if each requires proof of a fact which the other does not." *United States v. Ragins*, 840 F.2d 1184, 1188 (4th Cir. 1988). If each offense "requires proof of a fact that the other does not, the *Blockburger* test is satisfied," meaning the two offenses are not the same, "notwithstanding a substantial overlap in the proof offered to establish the crimes." *Brown v. Ohio*, 432 U.S. 161, 166 (1977) (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)).

"Historically, courts have treated greater and lesser-included offenses as the same offense for double jeopardy purposes . . . ." *Currier v. Virginia*, 585 U.S. 493, 500 (2018). A "lesser included offense . . . requires no proof beyond that which is required for conviction of the greater . . . ." *Brown*, 432 U.S. at 168. "The greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it." *Id.* Here, Whitley argues that Hobbs Act robbery and federal carjacking are the "same offense" because the former is a lesser included offense of the latter. We review his double jeopardy

---

[3] By its actual language, the Double Jeopardy Clause provides, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

claim de novo. *Schnittker*, 807 F.3d at 81.

Whitley's argument requires us to compare the offenses' elements using the *Blockburger* test. "Under 18 U.S.C. § 2119, a person commits the crime of federal carjacking if he or she, '(1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation.'" *United States v. Small*, 944 F.3d 490, 498 (4th Cir. 2019) (quoting *United States v. Foster*, 507 F.3d 233, 246–47 (4th Cir. 2007)). And a person commits Hobbs Act robbery if he "[1] unlawfully takes or obtains personal property [2] from the person or in the presence of another, against his will, [3] by means of actual or threatened force, or violence, or fear of injury," and, in doing so, "[4] in any way or degree obstructs, delays or affects commerce." 18 U.S.C. § 1951; *see also United States v. Taylor*, 754 F.3d 217, 222 (4th Cir. 2014).

According to Whitley, "[b]oth offenses require (1) a taking of personal property (2) from the person or in the presence of another (3) by force, violence, or intimidation, (4) affecting interstate commerce." Op. Br. at 16. He maintains that federal carjacking merely requires the added element of an intent to cause death or serious bodily harm. The government counters that Hobbs Act robbery cannot be a lesser included offense of federal carjacking because, in addition to federal carjacking's additional intent element, the two

8

offenses involve different "interstate" elements.[4] The government argues that these differing elements mean federal carjacking and Hobbs Act robbery are separate offenses under the *Blockburger* test. We agree with the government.

The "interstate" elements of federal carjacking and Hobbs Act robbery provide each offense's jurisdictional hook. To satisfy the jurisdictional element of Hobbs Act robbery, the government must show that the robbery "obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 1951(a). To satisfy the jurisdictional element of federal carjacking, the government must show that the stolen vehicle was "transported, shipped, or received in interstate or foreign commerce." *Id.* § 2119. In our circuit, jurisdictional elements may be considered in a *Blockburger* analysis.[5] *See United States v. Jones*, 797 F.2d 184 (4th Cir.

---

[4] The government also argues that the offenses differ under *Blockburger* with respect to both their intent and taking elements. As to intent, federal carjacking requires the specific intent to cause death or serious bodily injury, but Hobbs Act robbery does not. And as to taking, federal carjacking only applies to thefts of vehicles, while Hobbs Act robbery covers thefts of any personal property. Because we decide this case on the jurisdictional elements of the offenses, we need not address these arguments.

[5] The Fifth Circuit has held that jurisdictional elements should not be considered in a *Blockburger* analysis. *United States v. Gibson*, 820 F.2d 692, 698 (5th Cir. 1987). It has since expressed "some concern with the reasoning of *Gibson*" but continues to follow it as binding precedent. *United States v. Agofsky*, 458 F.3d 369, 372 (5th Cir. 2006). In contrast, the Ninth Circuit sides with us, having held that "the jurisdictional element of a statute . . . must be given substantive weight in making the *Blockburger* analysis." *United States v. Hairston*, 64 F.3d 491, 496 (9th Cir. 1995). The Supreme Court has not answered whether jurisdictional elements should be considered during a *Blockburger* analysis. However, in *Torres v. Lynch*, 578 U.S. 452, 467 (2016), the Supreme Court explained that both substantive and jurisdictional elements "must be proved to a jury beyond a reasonable doubt." Given that jurisdictional elements must be proven beyond a reasonable doubt, and given that the *Blockburger* test requires us to consider whether each offense "requires proof

1986); *McGann v. United States*, 261 F.2d 956, 958–59 (4th Cir. 1958). And consideration of these two jurisdictional elements leads to our conclusion that they are not the same.

The two jurisdictional elements require proof of different facts. The jurisdictional element of federal carjacking looks backwards. It turns on what happens before the theft—whether the stolen vehicle had previously been transported, shipped or received in interstate or foreign commerce. That element cannot be satisfied by conduct or repercussions occurring after the vehicle's theft. *See United States v. Graham*, 67 F.4th 218, 223 (4th Cir. 2023) (concluding that the defendant's "acknowledgement that he and his confederates drove across state lines after taking the car [did] not satisfy [the federal carjacking statute's interstate] requirement, which by its plain language focuses on the car's status at the time of the taking"). In contrast, the jurisdictional element of Hobbs Act robbery looks forward. It turns on what happens as a result of the theft—whether the theft affects interstate commerce. This inquiry cannot be satisfied by merely asking, retrospectively, whether the stolen property had previously moved in interstate commerce.

To explain, let's consider two examples. First, imagine a car manufactured in Detroit is sold to a Michigan business engaged in interstate commerce without first leaving the state. If a thief, intending to cause serious bodily harm, steals that car from the business's employee by force, there is no federal carjacking because the stolen vehicle had not, prior to the theft, moved in interstate commerce. And evidence that the theft itself affected

---

of a fact which the other does not," *Blockburger*, 284 U.S. at 304, we believe *Torres* supports our consideration of jurisdictional elements during a *Blockburger* analysis.

interstate commerce—which would meet the jurisdictional element of Hobbs Act robbery—does not satisfy federal carjacking's jurisdictional element.

To change things up, imagine a second scenario in which the car is transferred from the Detroit manufacturer to a South Carolina car dealer who sells it to a resident of the Palmetto state. If a thief, armed with a weapon and intending to cause serious bodily harm, steals the car from the resident by force, the jurisdictional element of federal carjacking would be satisfied because the stolen vehicle had, prior to the theft, moved in interstate commerce. But the vehicle's previous movement across state lines does not alone establish the effect on interstate commerce required for Hobbs Act robbery.

True, a federal carjacking may, at times, obstruct, delay or affect interstate commerce. Such was the case, here. Whitley's carjacking of a delivery van used by a company engaged in interstate commerce also affected interstate commerce. But the fact that a federal carjacking *may* obstruct, delay or affect interstate commerce does not render that possibility an element of the offense. In fact, the government did not need to show that the federal carjacking had any effect on interstate commerce for the jury to find that the jurisdictional element of that offense had been proven. The government, instead, only had to show that the van previously moved in interstate commerce. It did so by presenting evidence that the van, which Whitley stole in Virginia, had Maryland license plates.

Resisting this conclusion, Whitley suggests that all that is needed to satisfy the jurisdictional element of Hobbs Act robbery is proof that the robbery deprived the victim of property with tangible value, something he insists that federal carjacking's taking element necessarily involves because a vehicle has tangible value. But that misunderstands both the

11

*Blockburger* inquiry and Hobbs Act robbery's jurisdictional element.

First, Whitley effectively proposes that these differing elements are ultimately the same because the theft of a vehicle for purposes of federal carjacking necessarily affects interstate commerce for purposes of Hobbs Act robbery. But that is not *Blockburger*'s inquiry. *Blockburger* asks whether each offense requires an element that the other does not, not whether both offenses' elements may simultaneously be satisfied by the proof involved in a particular case. *See Brown*, 432 U.S. at 166 (recognizing that two offenses may be deemed distinct under *Blockburger* "notwithstanding a substantial overlap in the proof offered to establish the crimes" (quoting *Iannelli*, 420 U.S. at 785 n.17)). And as already explained, the two jurisdictional elements here differ under that proper *Blockburger* inquiry—federal carjacking's jurisdictional element retrospectively asks whether the vehicle previously moved in interstate commerce, while Hobbs Act robbery's jurisdictional element prospectively asks whether the property's theft affects interstate commerce.

Second, contrary to Whitley's suggestion, Hobbs Act robbery's jurisdictional element is not satisfied by merely showing that the stolen property had tangible value. In all fairness, the Hobbs Act only requires proof of a "minimal" effect on interstate commerce. *United States v. Taylor*, 754 F.3d 217, 222 (4th Cir. 2014), *aff'd*, 579 U.S. 301 (2016) (quoting *United States v. Spagnolo*, 546 F.2d 1117, 1119 (4th Cir. 1976)). And "it is sufficient that the 'relevant class of acts' has a measurable impact on interstate commerce" in the aggregate. *Id.* (quoting *United States v. Tillery*, 702 F.3d 170, 174 (4th Cir. 2012)). We applied this aggregation principle in *Taylor*, where we considered a defendant's Hobbs Act robbery convictions based on his robberies of marijuana dealers. *Id.* The defendant

12

argued that the government had presented insufficient evidence that his individual robberies affected interstate commerce to satisfy the Hobbs Act's jurisdictional element. *Id.* We recognized that "[d]rug dealing is a commercial enterprise and robberies of drug dealers threaten that enterprise; that is enough for a federal court to exercise jurisdiction under the Hobbs Act." *Id.* at 223. "Because drug dealing in the aggregate necessarily affects interstate commerce, the government was simply required to prove that [the defendant] depleted or attempted to deplete the assets of such an operation." *Id.* at 224. It was not simply the depletion or attempted depletion of assets that satisfied the jurisdictional element in *Taylor*. It was the depletion or attempted depletion of assets of drug dealers, whose activity is regulated by the federal government because it affects interstate commerce in the aggregate. *See id.; see also United States v. Williams*, 342 F.3d 350, 354–55 (4th Cir. 2003) ("Commerce is sufficiently affected under the Hobbs Act where a robbery depletes the assets of a business that is engaged in interstate commerce.").

The Supreme Court affirmed our *Taylor* decision. *Taylor v. United States*, 579 U.S. 301 (2016). The Supreme Court explained that "the market for marijuana, including its intrastate aspects, is 'commerce over which the United States has jurisdiction.'" *Id.* at 307 (quoting 28 U.S.C § 1951(b)(3)). "It therefore follows as a simple matter of logic that a robber who affects or attempts to affect even the intrastate sale of marijuana grown within the State affects or attempts to affect commerce over which the United States has jurisdiction." *Id.* Accordingly, "if the Government proves beyond a reasonable doubt that a robber targeted a marijuana dealer's drugs or illegal proceeds, the Government has proved beyond a reasonable doubt that commerce over which the United States has jurisdiction was

13

affected." *Id.* at 308. Accordingly, "where the target of a robbery is a drug dealer, proof that the defendant's conduct in and of itself affected or threatened commerce is not needed. All that is needed is proof that the defendant's conduct fell within a category of conduct that, in the aggregate, had the requisite effect" on interstate commerce. *Id.* at 309.

But this does not mean that the theft of property with tangible value satisfies the Hobbs Act's jurisdictional element. At a minimum, more evidence is required to show that the theft of that property had some effect on commerce. Here, we need not define the contours of precisely what is required to make that showing. It is enough to say that the element requires more than the stolen property having tangible value.

For these reasons, we find that the jurisdictional elements of Hobbs Act robbery and federal carjacking differ. The Hobbs Act requires the robbery, whether alone or in the aggregate, to obstruct, delay or affect interstate commerce, while federal carjacking does not. In contrast, carjacking requires proof that the stolen property previously moved in interstate commerce, while Hobbs Act robbery does not. Because each offense requires proof of a fact that the other does not, the *Blockburger* test is satisfied. Whitley's double jeopardy challenge fails.

## B.

Turning to Whitley's sufficiency challenge, Whitley argues that there is insufficient evidence of his intent to cause death or serious bodily harm to support the jury's guilty verdict on his carjacking count. We review a district court's conclusion on the sufficiency of the evidence de novo. *United States v. Robertson*, 68 F.4th 855, 862 (4th Cir. 2023). When considering a sufficiency challenge, a court must sustain the jury's guilty verdict "if

14

there is substantial evidence, taking the view most favorable to the Government, to support it." *Id.* (quoting *United States v. Stockton*, 349 F.3d 755, 761 (4th Cir. 2003)). "Substantial evidence is 'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). We can reverse a conviction "only when no reasonable juror 'could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *United States v. Dennis*, 19 F.4th 656, 666 (4th Cir. 2021)).

According to Whitley, the evidence shows that he merely brandished a firearm, which, according to him, is insufficient to establish a specific intent to cause death or bodily harm. Whitley invites us to adopt the "brandishing-plus" requirement adopted by some circuits in which more than mere brandishing is required to establish such intent. *See United States v. Fekete*, 535 F.3d 471, 480 (6th Cir. 2008); *United States v. Randolph*, 93 F.3d 656, 664 (9th Cir. 1996), *abrogated on other grounds by Holloway v. United States*, 526 U.S. 1 (1999). We need not accept that invitation to resolve this challenge. Under our precedent, there is sufficient evidence to support the jury's finding that Whitley had the intent to cause death or serious bodily harm.

As noted above, federal carjacking requires a showing that the defendant had the "intent to cause death or serious bodily harm." 18 U.S.C. § 2119. This "mens rea component, a specific intent requirement, is satisfied where the defendant unconditionally or conditionally 'inten[ded] to cause death or serious bodily harm.'" *Small*, 944 F.3d at 498. "That is, the government need not prove that the defendant intended to cause death or

15

serious harm 'if unnecessary to steal the car,' so long as it shows that 'at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver *if necessary to steal the car . . . .*'" *Id.* (quoting *Holloway*, 526 U.S. at 12 (emphasis added)). Establishing conditional intent requires evidence "above and beyond 'an empty threat, or intimidating bluff' made by the defendant during the carjacking." *Id.* (quoting *Holloway*, 526 U.S. at 11). After all, "[i]f the defendant were unwilling to follow through on an intimidating bluff, then he would lack the intent 'to seriously harm or kill the driver if that action had been necessary to complete the taking of the car.'" *Id.* (quoting *Holloway*, 526 U.S. at 12).

Whitley insists that evidence of his "mere brandishing" of a firearm is akin to an empty threat or intimidating bluff. Op. Br. at 23. He emphasizes that there is no evidence that he made physical contact with Hawkins or explicitly threatened to harm him. However, our precedent does not require evidence of physical contact or explicit threats to support a finding of a specific intent to cause death or serious bodily harm in federal carjacking cases. *See, e.g.*, *Small*, 944 F.3d at 500 (finding sufficient evidence of intent to cause death or serious bodily harm where defendant made no explicit threats); *United States v. Robinson*, 855 F.3d 265, 268–69 (4th Cir. 2017) (finding sufficient evidence of intent to cause death or serious bodily harm with no indication that defendant made physical contact with victim). Moreover, regardless of whether Whitley's actions can accurately be described as "mere brandishing," we have recognized that "an assailant's wielding a gun provides a strong indication of intent to inflict bodily harm if met with resistance, particularly when

16

the perpetrator did not merely display a gun but rather pointed the gun at the victim in demanding car keys and other possessions." *Small*, 944 F.3d at 499 (cleaned up).

Here, the jury heard evidence that Whitley, obscuring his face with a gaiter, pointed a firearm at Hawkins' torso at close range and told him, "don't touch anything," and to "get the f*** out of the van." J.A. 59. Viewing the evidence in the light most favorable to the government, as we must when considering a sufficiency challenge, a reasonable fact finder could accept these facts as demonstrating beyond a reasonable doubt that Whitley had the specific intent to kill or seriously injure Hawkins if he resisted Whitley's demands.

## III.

For these reasons, we reject Whitley's double jeopardy and sufficiency challenges and affirm his convictions and sentences.

*AFFIRMED*

17